**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

---

In re:   Millard D. Norton, III                                              BK No: 17-10644
Debtor                                                                        Chapter 7

---

# DECISION AND ORDER ON DEBTOR'S
# MOTION FOR DAMAGES FOR VIOLATION OF STAY

Debtor Millard Norton alleges that Continental Finance Company ("Continental") and Celtic Bank ("Celtic") violated the automatic stay by mailing him two communications demanding payment of the pre-petition debt he owed them on a Surge credit card account after the commencement of his bankruptcy case. *See* Doc. #11 (the "Motion"). These violations, Mr. Norton asserts, caused him actual damages, including attorney fees, lost income, and emotional distress. Mr. Norton also seeks punitive damages. Both Continental and Celtic were served with copies of the Motion, and no responses have been filed. As instructed by the Court, Mr. Norton submitted an itemized statement of the damages he alleges he incurred related to this matter. *See* Doc. #20. As will be more fully discussed, the Court concludes that Continental willfully violated the automatic stay through its post-petition actions, and Mr. Norton suffered actual damages as a result of that violation. However, Mr. Norton has not shown that Celtic violated the stay.

**I.     Jurisdiction**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334, Rule 109(a) of the local rules of the United States District Court for the District of Rhode Island, and 11 U.S.C. § 362(k)(1).[1] This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "Code," "chapter," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37.

**II.    Applicable Law**

Bankruptcy Code § 362(a) imposes an automatic stay as of the petition date, and serves as "one of the fundamental protections that the Bankruptcy Code affords to debtors." *In re McKenna*, 566 B.R. 286, 288 (Bankr. D.R.I. 2017) (quoting *In re Jamo*, 283 F.3d 392, 398 (1st Cir. 2002) (citations omitted)). Redress for violation of the stay is available under § 362(k)(1), which provides that a debtor injured by a "willful violation" of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." A debtor seeking damages under this provision bears the burden of proving, by a preponderance of the evidence – in other words, a standard of more likely than not – three elements: "(1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." *Slabicki v. Gleason (In re Slabicki)*, 466 B.R. 572, 577-78 (B.A.P. 1st Cir. 2012) (citations omitted). "A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation . . . is met if there is knowledge of the stay and the defendant intended the actions which constitute the violation." *Fleet Mortg. Group v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999) (citations omitted). "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." *Id*.

Here in the First Circuit, emotional distress is considered "actual damage" under § 362(k)(1). *Id.*; *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004). "[A]ctual damages should be awarded only if there is concrete evidence supporting the award of a definite amount." *Id.* (citations omitted). However, courts have awarded emotional distress damages without medical evidence or corroborating testimony. *See Bererhout v. City of Malden (In re Bererhout)*, No. 09-18956-JNF, Adv. P. No. 09-1314, 2011 Bankr. LEXIS 2097,

at *16-17 (Bankr. D. Mass. May 24, 2011); *Varela v. Quinones Ocasio (In re Quinones Ocasio)*, 272 B.R. 815, 824-25 (B.A.P. 1st Cir. 2002); *In re Tine*, BK No. 11-12604, 2012 Bankr. LEXIS 2092, at *8 (Bankr. D.R.I. May 4, 2012).

Courts also have considered instances where emotional distress is accompanied by actual financial injury. *See, e.g.*, *Swilling v. ACA Fin. Servs. (In re Swilling)*, No. 07-11273-WRS, Chapter 7, Adv. Pro. No. 08-1016-WRS, 2008 Bankr. LEXIS 3124, at *24-25 (Bankr. M.D. Ala. Nov. 20, 2008) (awarding $5,000.00 in emotional distress damages when a creditor intercepted the debtor's social security check); *Matthews v. United States (In re Matthews)*, 184 B.R. 594, 600-01 (Bankr. S.D. Ala. 1995) (awarding $3,000.00 for loss of use of $1,800.00 tax refund for one year and debtors' testimony about how upset and stressed they and their children became as a result of the wrongful stay violations and seizure of their tax refund).

As to attorney fees, in the awarding of damages under Bankruptcy Code § 362(k), "an award of fees *reasonably incurred* is mandated by the statute; courts awarding fees under § 362(k) thus retain the discretion to eliminate unnecessary or plainly excessive fees." *In re Silk*, 549 B.R. 297, 302 (Bankr. D. Mass. 2016) (quoting *America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1101 (9th Cir. 2015) (citation omitted)). "The reasonableness of fees is determined in accordance with § 330 of the Bankruptcy Code." *Id.* (quoting *Lopez v. Consejo de Titulares del Condominio Carolina Court Apts. (In re Lopez)*, 405 B.R. 24, 32-33 (B.A.P. 1st Cir. 2009)).

Section 330(a)(1) authorizes the bankruptcy court to award "reasonable compensation for actual, necessary services rendered . . . based on an after-the-fact consideration of 'the nature, the extent, and the value of such services, taking into account all relevant factors.'" *In re Mendez*,

No. 05-06196 (ESL), 2012 Bankr. LEXIS 3693, at *4 (Bankr. D.P.R. Aug. 9, 2012) (quoting 11 U.S.C. § 330(a)(1), (3)).

As a starting point, in this Circuit a court must first utilize the lodestar method to evaluate the reasonableness of the fees requested. The lodestar amount is calculated by taking "the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001). Next, after calculating the "presumptively reasonable fee . . . it is subject to upward or downward adjustment in certain circumstances." *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992).

On the other hand, the imposition of punitive damages requires more than a mere willful violation of the automatic stay. *Heghmann*, 316 B.R. at 405. Factors to consider include: "(1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor." *Id.*

> "The cases interpreting 'appropriate circumstances' in 11 U.S.C. § 362(k)(1) indicate . . . that egregious, intentional misconduct on the violator's part is necessary to support a punitive damages award. [S]uch awards are reserved for cases in which the violator's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover punitive damages, the violator must act with actual knowledge that he is violating a federally protected right or with reckless disregard of whether he is doing so."

*In re Barboza*, 211 B.R. 450, 453 (Bankr. D.R.I. 1997) (citations omitted).

The Court must also be mindful that "[t]he primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the creditor's behavior [and] the prospect of such change is relevant to the amount of punitive damages to be awarded." *Ocasio*, 272 B.R. at 825 (citations omitted); *see also Rijos v. Vizcaya (In re Rijos)*, 263 B.R. 382

(B.A.P. 1st Cir. 2001) (finding that the defense of "the computer did it . . . [when] the computer automatically issued a bill while a new software system was being installed" is not viable against a stay violation claim). Previous Rhode Island bankruptcy cases on the award of punitive damage have focused on creditors whose policy of dealing with debtors led them to violate the automatic stay. *See In re Flynn*, 143 B.R. 798, 803-04 (Bankr. R.I. 1992) (cautioning that the creditor would have to pay $5,000.00 in punitive damages if it did not amend its policies for how to deal with account holders who file bankruptcy); *In re Baker*, 183 B.R. 30, 33 (Bankr. R.I. 1995) (warning the creditor that it would have to pay $2,500.00 in punitive damages if it did not amend its procedures and submit them to the court with a statement that it trained its employees accordingly).

### III. Findings of Fact

The Court finds the following facts based on the uncontroverted allegations in the Motion, and the attachments thereto, and the Court's own review of the docket in this case.[2]

1. On April 21, 2017, Mr. Norton filed a chapter 7 bankruptcy petition.

2. On that same date, Mr. Norton filed Schedule E/F and a creditor matrix, listing "Surge Mastercard," Cardholder Services, P.O. Box 8099, Newark, DE, 19714, as a creditor holding an unsecured claim in the amount of $430.24 for credit card debt.

3. Mr. Norton did not list Continental or Celtic as a creditor on the creditor matrix or on Schedule E/F when he filed his bankruptcy petition or at any time thereafter.

4. On April 26, 2017, the Bankruptcy Noticing Center mailed the Notice of Chapter 7 Bankruptcy Case regarding Mr. Norton's bankruptcy case (the "Notice") to the creditors listed on Mr. Norton's creditor matrix, including "Surge Mastercard."

5. The "Surge Mastercard" address to which the Notice was sent was listed on Mr. Norton's "Surge Mastercard" monthly statement as a "Surge Mastercard Cardholder Services" address, and is also listed on Continental's website as an address for inquiries about the "Surge Card." *See* Motion, Exhibit A.

---

[2] The Court is taking judicial notice of the bankruptcy docket. *See In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

6. Continental received actual notice of the filing of Mr. Norton's bankruptcy petition.

7. On May 3, 2017, Surge/Continental sent a collection letter to Mr. Norton ("First Collection Letter"), which Mr. Norton received. *See* Motion, Exhibit C.

8. On May 12, 2017, Mr. Norton's counsel replied to "Surge" with a letter providing information about Mr. Norton's bankruptcy and the automatic stay, which letter was not returned to counsel as undeliverable ("Counsel's Letter"). *Id*.

9. Continental received Counsel's Letter.

10. Despite Continental receiving notice of his bankruptcy filing and Counsel's Letter, on or about May 23, 2017, Mr. Norton received a statement from Surge/Continental ("Second Collection Letter") demanding payment of the debt and stating that additional collection activity against him was being considered. *See* Motion, Exhibit D.

11. Mr. Norton's statement of damages includes an affidavit in which he states: that it was his understanding that his bankruptcy would stop creditors from trying to collect debts from him and that on receiving the First Collection Letter he became very worried and afraid his case might not apply to "Surge" (i.e. Continental); that when he received the Second Collection Letter he did not know if he would be sued on this pre-petition debt and he again became worried that Surge/Continental did not seem to care about his bankruptcy case; that he has had general worry and anxiety over these collection efforts causing him several restless nights; and that he had to take time away from work (about two hours at $15.00 per hour) to deal with this situation. *See* Doc. #20, Exhibit C.

12. Mr. Norton's affidavit regarding lost income and emotional damages is reasonable in light of the post-petition pursuit by Surge/Continental of its pre-petition debt despite being notified twice of the pendency of this bankruptcy case.

13. In support of his damage claim, Mr. Norton's counsel submitted an itemized statement of attorney fees and expenses incurred in connection with this matter totaling $1,988.16. *See* Doc. #20, Exhibits A and B.

14. The itemized and requested attorney fees and expenses are reasonable in light of the time and efforts of counsel necessitated by Surge/Continental's post-petition pursuit of its pre-petition debt despite being notified twice of the pendency of this bankruptcy case.

15. As to Celtic, although Mr. Norton alleges that Celtic is the issuer of the "Surge MasterCard" and asserts that Continental was acting as the agent of Celtic, insufficient evidence has been presented to support these allegations.

16. Surge/Continental knew that sending the collection letters and continuing efforts to collect its pre-petition debt after Mr. Norton had filed bankruptcy and with knowledge of that filing was a violation of the automatic stay.

17. Mr. Norton has shown by a preponderance of the evidence that Continental knowingly and willfully violated the automatic stay.

18. Mr. Norton has failed to show by a preponderance of the evidence that Celtic knowingly and willfully violated the automatic stay.

## IV. Conclusions of Law

The Court makes the following conclusions of law based on the findings of fact and the applicable legal standards:

1. Continental knowingly and willfully violated the automatic stay imposed by Code § 362(a) by sending Mr. Norton the First Collection Letter and the Second Collection Letter to collect a pre-petition debt after he filed his bankruptcy petition; and

2. Under Code § 362(k)(1), Mr. Norton is entitled to actual damages, including costs and attorney fees. He has proven by a preponderance of the evidence actual damages of:

    a. $30.00, for lost income;
    b. $500.00, for emotional distress; and
    c. $1,988.16, for attorney fees and costs.

Mr. Norton has not proven by a preponderance of the evidence that he is entitled to punitive damages. Continental's conduct was not so extreme as to warrant punitive damages, and there is no evidence that Continental has a history or pattern of violating the automatic stay. The Court cautions Continental that future stay violations may warrant a different result as to punitive damages.

## V. Conclusion

Mr. Norton's Motion is GRANTED as to Continental, which is hereby ordered to pay Mr. Norton $2,518.16 within 60 days of the entry of this Decision and Order. Mr. Norton shall serve a copy of this Decision and Order within seven days of its entry on Continental at the

address set forth in the certification of service in the Motion and also on its Delaware registered agent. Mr. Norton's Motion is DENIED as to Celtic.

Date: August 25, 2017             By the Court,

*Diane Finkle*

Diane Finkle
U.S. Bankruptcy Judge